UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

LIN LIU,

                       Plaintiff,            19 cv. 10784 (JGK)

        - against -                   OPINION AND ORDER

DANIEL B. SMITH,[1] ET AL.

                  Respondents.
────────────────────────────────

JOHN G. KOELTL, District Judge:

      The plaintiff, Lin Liu, applied for an immigrant visa as a derivative child of her father, who applied for and received an employment-based fifth preference visa ("EB-5 visa"). The defendants denied Ms. Liu a visa because, by the time a visa number became available, she was too old to qualify as a derivative child. Ms. Liu alleges that the defendants calculated her age incorrectly pursuant to the Child Status Protection Act (the "CSPA"), and that she is entitled to a visa as a derivative child of her father. She alleges that the defendants unreasonably interpreted the CSPA, that the defendants improperly adopted a legislative rule in contravention of notice and comment procedures, and that the rule was unlawfully retroactively applied to her. She brings

────────────────────

[1] This action originally was brought against the former Secretary of State, Michael Pompeo. "[W]hen a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending" the officer's successor "is automatically substituted as a party." Fed. R. Civ. P. 25(d). The Clerk is directed to change the caption to reflect the substitution of Daniel B. Smith as the Acting United States Secretary of State for Michael Pompeo.

this suit against Daniel B. Smith, in his official capacity as Acting United States Secretary of State, Edward J. Ramotowski, in his official capacity as Deputy Assistant Secretary of State for Visa Services, the United States Department of State ("DOS"), and the United States of America.   The defendants move to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).   For the following reasons, the motion to dismiss is **granted.**

I.

The following allegations are taken from the Complaint and are accepted as true for purposes of the motion to dismiss.

The plaintiff, Lin Liu, is a Chinese national.   Compl. ¶¶ 42, 68.   On September 18, 2014, Ms. Liu's father filed an I-526 petition for an EB-5 visa, when the plaintiff was 18 years old.   Compl. ¶ 43.   With certain limitations, children and spouses of individuals applying for family- or employment-based visas, including an EB-5 visa, can qualify for the same status as the adult applicant.   Compl. ¶ 14; 8 U.S.C. § 1153(d).   To qualify as a derivative child, the individual must be unmarried and under 21 years old.   Compl. ¶ 15; 8 U.S.C. § 1101(b)(1).

Once a visa petition is filed, it is assigned a "priority date" that determines the order in which a visa number becomes available.   Compl. ¶ 8; see 8 U.S.C. § 1153(e).   After a petition is approved, the petitioner and derivative family

2

members must wait for that visa number to become "available."
Compl. ¶ 9.  When the petitioner's priority date becomes
"current," the individual and the individual's derivative family
members can apply for the visas.  Compl. ¶ 10.  DOS publishes a
monthly Visa Bulletin, which lists priority dates that are
current by country of origin and category.  When a priority date
becomes current depends, in part, on the country of origin
because Congress sets limits by country of origin and category
on the number of visas that can be issued.  Compl. ¶ 12.  After
an applicant has submitted all the required fees and documents
to the National Visa Center (the "NVC"), part of DOS, and the
visa number becomes available, the applicant must appear for an
in-person interview.  8 U.S.C. §§ 1202(h), 1201(a)(1).

     In 2014, President Obama issued a presidential memorandum
seeking to simplify and streamline the visa application system.
Compl. ¶ 31.  In response to the memorandum, the Government
modified the Visa Bulletin.  Compl. ¶¶ 33-34.  Before these
changes, the Visa Bulletin only listed when priority dates
became current for final action, meaning when the visa numbers
were authorized for issuance.  See Compl. ¶¶ 34-35.  The
Government changed the Visa Bulletin to show not only when the
priority date became current for final action, but also when
applicants could submit their materials to the NVC.  Id.  The
chart showing the date at which the priority date becomes

current for final action is titled "APPLICATION FINAL ACTION DATES FOR EMPLOYMENT-BASED PREFERENCE CASES" and the chart showing the date on which the applicant can submit materials to the NVC is titled "DATES FOR FILING OF EMPLOYMENT-BASED VISA APPLICATIONS." Compl. ¶ 35. The NVC accepts application materials, as listed on the Dates for Filing chart of the Visa Bulletin, before the visa is "authorized for issuance" under the Final Action Dates chart. Compl. ¶ 38.

The plaintiff began the visa application process after her father's I-526 petition was approved on February 19, 2016. Compl. ¶¶ 46-47. On August 3, 2016, the NVC completed its review of the plaintiff's application materials and placed her in line for an interview with the United States Consulate. Compl. ¶ 54. Before her interview, the plaintiff's priority date in the Dates for Filing chart retrogressed, meaning it was no longer current. Compl. ¶ 55. Visa retrogression occurs when more people in a particular category or country apply for a visa than the number of visas available for that month. On January 22, 2018, the plaintiff's priority date once again became current in the Dates for Filing chart and the plaintiff and her family were again placed in line for an interview with the Consulate. Id. The interview took place on May 30, 2019, and the plaintiff's priority date became current in the Final Action Dates chart in May 2019. Compl. ¶¶ 56-58. At that point, the

4

plaintiff was 23 years old.  Compl. ¶ 57.  At the interview, the
plaintiff's parents' visas were issued, but the plaintiff's visa
was denied because she was too old to be considered a derivative
child.  Compl. ¶¶ 58-59.

The Child Status Protection Act (the "CSPA") was enacted to
ensure that the administrative delay in processing visa
applications did not lead to children aging out of their
derivative status.  Compl. ¶ 19, 21.  Under the CSPA, age for
purposes of derivative status is calculated as follows:

> (A)   the age of the alien on the date on which an immigrant
>       visa number becomes available for such alien (or, in
>       the case of subsection (d), the date on which an
>       immigrant visa number became available for the alien's
>       parent), but only if the alien has sought to acquire
>       the status of an alien lawfully admitted for permanent
>       residence within one year of such availability;
>       reduced by
>
> (B)   the number of days in the period during which the
>       applicable petition . . . was pending.

8 U.S.C. ¶ 1153(h)(1); Compl. ¶ 23.

The parties agree that the plaintiff's petition had been
pending for one year, five months, and one day.  See P. Br. at 6
n.1.  The dispute in this case centers around the proper
interpretation of when a visa number becomes "available" for
purposes of determining an applicant's age under the CSPA.  If
the date a visa number becomes available, for CSPA purposes,
were determined by when the applicant's priority date becomes
current on the Dates for Filing chart, then the plaintiff should

have been considered a derivative child of her father.  However, the defendants interpreted the statute to mean a visa number becomes available when the applicant's priority date becomes current on the Final Action Date chart because a visa could not have been issued prior to that date.  Based on the defendant's interpretation, the plaintiff was not considered a derivative child and was denied a visa on that basis.

The plaintiff brings claims for: (1) declaratory judgment that the defendant's interpretation of the CSPA is improper; (2) declaratory judgment that the implementation of the updated Visa Bulletin violated the notice and comment rulemaking procedures of the Administrative Procedures Act (the "APA"); and (3) declaratory judgment that the requirements set forth by the updated Visa Bulletin were improperly applied retroactively. The defendants move to dismiss all claims on the basis that the Government's application of the statute is lawful.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).[2]  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely

---

[2] Unless otherwise noted, this Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.  When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

### III.

### A.

The plaintiff first seeks a declaratory judgment that the defendants' interpretation of the CSPA is unlawful.  The CSPA specifies that, to calculate age, one must subtract from the applicant's age the time lost due to administrative delay after the "visa number becomes available" so long as the applicant sought to acquire the visa within one year of availability.  8 U.S.C. § 1153(h).  The plaintiff contends that the date a visa number becomes available is when the applicant's priority date becomes current on the Dates for Filing chart.  The defendants interpret the statute to mean that the visa number becomes available when the applicant's priority date becomes current on the Final Action Date chart.  The defendants' interpretation is consistent with the ordinary meaning of the text of the CSPA and with the text and history of the statute.

Congress mandates limits on the number of employment-based visas that can be issued.  8 U.S.C. § 1153(b)(5).  It is unlawful to issue a visa number in excess of the limits set by Congress.  See id. §§ 1153(a), (b)(5) & (d), 1153(e)(1).  Pursuant to the ordinary meaning of the term "available," a visa number cannot be considered available until it can be issued legally.  Whether or not an applicant may submit materials to the NVC does not impact the question of whether the visa may be

issued, and as such, the date on which an applicant can submit
materials to the NVC cannot be considered the date on which the
visa number becomes available.  Rather, the defendants properly
construe the date on which the applicant's priority date becomes
current on the Final Action Date chart to be the date on which
the applicant's visa becomes available because that is the chart
that indicates when the defendants would be legally authorized
to issue a visa.  It cannot be said that a visa is available
until the defendants are legally authorized to issue it.  As
such, the defendants were correct to tether availability to the
Final Action Date chart.

     The history and purpose of the CSPA confirm this
interpretation.  While the CSPA was passed to prevent applicants
from aging out of their derivative status, it was designed to
prevent aging out "because of—but only because of—bureaucratic
delays."  Scialabba v. Cuellar de Osorio, 573 U.S. 41, 53 (2014)
(Opinion of Justice Kagan).  Notwithstanding the protections of
the CSPA, "the beneficiary may age out solely because of the
time [she] spent waiting in line for a visa to become
available."  Id. at 45; see also id. at 53 ("[T]he months or,
more likely, years the alien spends simply waiting for a visa to
become available—is not similarly excluded in calculating [her]
age: Every day the alien stands in that line is a day [she]
grows older, under the immigration laws no less than in life.").

As the Supreme Court has interpreted the statute, the CSPA is designed to prevent an applicant from aging out of the applicant's derivative status due to bureaucratic delays, but not because of delays due to congressional limits on the availability of visas.  Consistent with this backdrop, the most reasonable interpretation of when the visa number becomes available is when the applicant's priority date becomes current on the Final Action Date chart, rather than the Dates for Filing chart.  The Dates for Filing chart provides a mechanism to reduce further administrative delay by informing applicants when they can file their papers to ensure timely issuance of visas when they become available.  However, the CSPA does not protect the plaintiff from aging out of her derivative status due to the time she spent waiting for a visa to become available pursuant to the country-specific limitations on numbers of visa numbers issued.

The Board of Immigration Appeals ("BIA") has come to the same conclusion.  The BIA has noted that "[w]hile the CSPA was enacted to alleviate the consequences of administrative delays, there is no clear evidence that it was intended to address delays resulting from visa allocation issues, such as the long wait associated with priority dates."  Matter of Wang, 25 I. & N. Dec. 28, 38 (BIA 2009).

District courts considering this issue have also held that the CSPA does not factor in the time an applicant spends waiting for a visa number to become available due to the limitations set by Congress.  See, e.g., Li v. Renaud, 709 F. Supp. 2d 230, 242 (S.D.N.Y. 2010), ("[T]he delay in the issuance of a visa to [the plaintiff] was caused by the demand for visas exceeding the relevant Numerical Limitation" and as such, the delay was "not the type of delay that Congress sought to address in enacting the CSPA."), aff'd 654 F.3d 376 (2d Cir. 2011); Jieling Zhong v. Novak, No. 08-cv-4597, 2010 WL 3302962, at *6 (D.N.J. Aug. 18, 2010) ("[T]he CSPA was not intended to address aging out as a result of delays caused by the high demand for a finite number of visas.").

In this case, the visa number became available to the plaintiff in May 2019 when her priority date became current in the Final Action Date chart.  That was the date on which the visa number became available for CSPA purposes because that was the date on which the defendants legally could issue the visa number pursuant to the country-specific limits mandated by Congress.  At that point, she was 23 years old.  After reducing her age by one year, five months, and one day, the time while the petition was pending, the plaintiff still would be over 21 years old, making her ineligible for derivative status under the

11

CSPA.  The defendants appropriately denied her a visa on that basis.

Accordingly, the defendant's use of the Final Action Date chart to determine when a visa number became available for the plaintiff for CSPA purposes was completely consistent with the CSPA and lawful.

**B.**

The plaintiff claims that the defendants' use of the Final Action Dates chart for determining age pursuant to the CSPA constitutes a legislative rule requiring notice and comment rulemaking under the APA.  Because the defendants' policy is more appropriately characterized as an interpretive rule, the plaintiff's argument fails.

An agency need not conduct notice and comment rulemaking to issue or amend interpretive rules.  5 U.S.C. § 553(b)(3)(A). "[T]he critical feature of interpretive rules is that they are issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers." Perez v. Mortg. Bankers Ass'n, 575 U.S. 92, 97 (2015).  The distinction between a legislative rule and an interpretive rule "is the source of much scholarly and judicial debate."  Id. at 96.  However, the Court of Appeals for the District of Columbia has provided instructive guidance:

> A legislative rule is one that has legal effect or,
> alternately, one that an agency promulgates with the

> intent to exercise its delegated legislative power by
> speaking with the force of law.  An interpretive rule,
> meanwhile, is one that derives a proposition from an
> existing document, such as a statute, regulation, or
> judicial decision, whose meaning compels or logically
> justifies the proposition.  An interpretive rule,
> instead of creating legal effects, thus puts the
> public on notice of pre-existing legal obligations or
> rights.

Nat. Res. Def. Council v. Wheeler, 955 F.3d 68, 83 (D.C. Cir.

2020).  The Second Circuit Court of Appeals has referred to a

"comprehensive test" from the Court of Appeals for the District

of Columbia to determine whether a rule is interpretive or

legislative:

> (1) whether in the absence of the rule there would not
> be an adequate legislative basis for enforcement
> action or other agency action to confer benefits or
> ensure the performance of duties, (2) whether the
> agency has published the rule in the Code of Federal
> Regulations, (3) whether the agency has explicitly
> invoked its general legislative authority, or (4)
> whether the rule effectively amends a prior
> legislative rule. If the answer to any of these
> questions is affirmative, we have a legislative, not
> an interpretive rule.

Sweet v. Sheahan, 235 F.3d 80, 91 (2d Cir. 2000) (citing Am.

Min. Cong. v. Mine Safety & Health Admin., 995 F.2d 1106, 1112

(D.C. Cir. 1993).

In this case, DOS's Foreign Affairs Manual ("FAM"),

published on DOS's website, provides that "the CSPA age is

determined on the date that . . . the principal alien's visa

became available (i.e., the date on which the priority date

became current in the Application Final Action Dates and the

petition was approved, whichever came later)." 9 FAM 502.1-
1(D)(4)(a). This rule "puts the public on notice of pre-
existing legal obligations or rights." See Nat. Res. Def.
Council, 955 F.3d at 83. And applying the test described in
Sweet compels the conclusion that the provision at issue in this
case is an interpretive rule. Even without the rule, the
defendants still would be able to interpret the statute in
accordance with their conclusion in this case. The rule is not
published in the Code of Federal Regulations. The agency has
not explicitly invoked its legislative authority. Rather, the
FAM, by its own terms merely "contains directives and guidance
for Department of State personnel based on statutes,
regulations, Executive Orders, Presidential directives, OMB
circulars and other sources." 9 FAM 101.1-1. And the decision
to tether availability of a visa number to when an applicant's
priority date becomes current on the Final Action Date chart
does not amend a prior legislative rule.

Accordingly, the agency decision linking the availability
of a visa number to the time when an applicant's priority date
becomes current on the Final Action Date chart cannot be said to
be a legislative rule requiring notice and comment under the
APA.

c.

The plaintiff alleges that the defendants unlawfully applied the updated Visa Bulletin to the plaintiff retroactively.  The plaintiff's claim fails because DOS did not implement a new policy, and therefore there was nothing that could have been applied retroactively to the plaintiff.

The Visa Bulletin formerly contained one chart that listed the priority dates that were current for visa number availability.  DOS updated the Visa Bulletin to include a second chart showing when applicants could file their applications with the NVC.  However, the Final Action Date chart, not the Dates for Filing chart, reflects the information previously listed in the one-chart Visa Bulletin.  In other words, the Dates for Filing chart is the new feature in the Visa Bulletin, not the Final Action Date chart.  Both before and after the modernization of the Visa Bulletin, DOS used the same information to determine when a visa number became available, namely, when a visa number could be issued legally given the limits set by Congress.  While DOS did change the format in which it conveyed this information—posting two charts to the Visa Bulletin rather than one chart—the substantive policy did not change.  The newly added Dates for Filing chart reflects useful information for when applicants can begin submitting materials to the NVC, but it does not reflect when visa numbers

15

are legally available.  Therefore, the plaintiff has not pleaded adequately that the defendants changed their policy with respect to tethering visa number availability to when the visa number could be issued lawfully given country and category limits to visa allocation.

Accordingly, the plaintiff has failed to state a claim that the defendants unlawfully retroactively applied a new policy to her.

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.[3]  For the reasons discussed above, the motion to dismiss is **granted.**  The Clerk is directed to enter judgment dismissing the case with prejudice. The Clerk is also directed to close all pending motions and to close this case.[4]

SO ORDERED.

Dated:     New York, New York
           January 25, 2021               /s/ John G. Koeltl
                                    _____
                                          John G. Koeltl
                                 United States District Judge

_____

[3] Because the defendants lawfully applied the CSPA, it is unnecessary to reach the issue of consular nonreviewability.
[4] This is not a case that would benefit from oral argument and the request for oral argument is therefore denied.